IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES; CHAMBER OF COMMERICE OF THE UNITED STATES OF AMERICA; OKLAHOMA STATE HOME BUILDERS ASSOCIATION; STATE CHAMBER OF OKLAHOMA; NATIONAL CHICKEN COUNCIL; NATIONAL TURKEY FEDERATION; and U.S. POULTRY & EGG ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | CIVIL ACTION NO.  CIV-17-000009-M |
| v. | ) ) | |
| THOMAS E. PEREZ, SECRETARY OF LABOR, in his official capacity; | ) ) ) | |
| DAVID MICHAELS, ASSISTANT SECRETARY OF LABOR FOR OCCUPATIONAL SAFETY AND HEALTH, in his official capacity; | ) ) ) ) ) | |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION; and | ) ) ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) | |
| DEFENDANTS. | ) | |

**COMPLAINT**

Plaintiffs National Association of Home Builders of the United States, Chamber of Commerce of the United States of America, Oklahoma State Home Builders Association, State Chamber of Oklahoma, National Chicken Council, National Turkey Federation, and U.S. Poultry & Egg Association, for their Complaint against Defendants Thomas E. Perez, David Michaels, Occupational Safety and Health Administration, and United States Department of Labor allege,

1

by and through their undersigned counsel, on knowledge as to Plaintiffs, and on information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Plaintiffs bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*., challenging a final rule issued by the United States Occupational Safety and Health Administration ("OSHA" or the "Agency"), entitled "Improve Tracking of Workplace Injuries and Illnesses," 81 Fed. Reg. 29,624 (May 12, 2016), as revised at 81 Fed. Reg. 31,854 (May 20, 2016) (the "Rule") (collectively attached as Exhibit 1).  The Rule exceeds the statutory authority Congress granted to the Agency under the Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. § 651 *et seq*.  The Rule is also arbitrary, capricious, and otherwise contrary to law, and portions of the Rule were promulgated without proper observance of procedure required by the APA.  Finally, the Rule violates the constitutional rights of Plaintiffs' members under the First and Fifth Amendments to the Constitution of the United States.

2.      The Rule has three primary components.  First, it requires certain employers to submit injury and illness recordkeeping forms to OSHA electronically (29 C.F.R. § 1904.41), which OSHA will then make publicly available on an online database.  81 Fed. Reg. at 29,692.  Second, it requires employers to establish "reasonable" procedures for employees to report work-related injuries (29 C.F.R. § 1904.35).  *Id.* at 29,691.  Third, it gives OSHA additional authority to redress alleged discrimination and retaliation against employees for reporting a work-related injury or illness beyond Section 11(c) of the OSH Act (29 C.F.R. §§ 1904.35(b)(1) and 1904.36). *Id.* at 29,691-92.  Each of these components is unlawful.

3.      First, OSHA lacks statutory authority to create an online database meant for the public dissemination of employers' injury and illness records.  OSHA has stated that it has authority for

the Rule under Sections 8 and 24 of the OSH Act, but neither of those sections authorizes OSHA to publicly disseminate reports collected under the Rule. In addition, the Rule is arbitrary and capricious for several reasons, including because OSHA has changed its position on the confidentiality of the information it is demanding companies produce, without providing a reasoned explanation for that change. Further, there is no evidence that publication of the information will have any effect on workplace safety and health; rather, the Rule is an imposition on businesses all so that their confidential and proprietary information may be misused by the public and special interest groups, thereby exposing them to significant reputational harm.

4.      Second, the creation in 29 C.F.R. §§ 1904.35(b)(1) and 1904.36 of a new scheme to prohibit alleged discrimination and retaliation against employees exceeds OSHA's statutory authority, as it contravenes the express and sole statutory scheme established by Congress in Section 11(c) of the OSH Act to provide redress for retaliatory actions by employers against employees.

5.      Third, the requirement in 29 C.F.R. § 1904.35(b)(1) that employers establish "reasonable" procedures for employees to report work-related injuries is arbitrary and capricious under the APA. The Rule does not define what is "reasonable," and further confuses by tautologically stating that "[a] procedure is not reasonable if it would deter or discourage a reasonable employee from accurately reporting a workplace injury or illness." 81 Fed. Reg. at 29,691. The regulatory text provides employers with no notice of what constitutes compliance with the Rule.

6.      Fourth, the rulemaking process OSHA used in promulgating the "supplemental" portions of the Rule—29 C.F.R. § 1904.35(b)(1)—failed to provide interested parties with adequate and fair notice of the final rule and denied interested parties an adequate opportunity to meaningfully

comment.  In proposing to require the implementation of "reasonable" reporting procedures in the Rule, OSHA provided no regulatory text for the public's consideration and failed to provide notice of the extent to which many workplace safety and health policies and procedures might be affected by such a requirement.

7.      And finally, the Rule violates the First and Fifth Amendments to the Constitution.  The Rule violates the First Amendment by compelling companies to submit their confidential and proprietary information for publication on a publicly available online database.  There is no evidence that publication of this information will have any effect on workplace safety and health. The limited authority given OSHA by Congress to require employers to collect and maintain injury and illness data cannot be read to allow the Agency to force employers to make public this information in violation of their constitutional rights.  Further, the Rule violates the Fifth Amendment by failing to provide employers adequate notice of what constitutes "reasonable" reporting procedures, subjecting employers to citation and potentially significant penalties without providing due process of law.

8.      For each of these reasons, the Rule violates the APA, and it should be vacated and set aside in its entirety.

## PARTIES

9.      Plaintiff National Association of Home Builders of the United States ("NAHB") is a Washington, D.C.-based trade association that represents more than 140,000 members nationwide who are involved in home building, remodeling, multi-family construction, property management, subcontracting, design, housing finance, building product manufacturing and other aspects of residential and light commercial construction.  NAHB is affiliated with more than 700

state and local home builder associations around the country.  NAHB has members that are headquartered in and operate in the state of Oklahoma and the Western District of Oklahoma.

10.     Plaintiff Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation.  It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.  More than 96 percent of the Chamber's members are small businesses with 100 or fewer employees.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly brings litigation challenging the legality of rulemakings by federal agencies, including the U.S. Department of Labor, in order to protect the legal rights of American businesses.  The Chamber has members that are headquartered in and operate in the state of Oklahoma and the Western District of Oklahoma.  The Chamber brings this action on behalf of its members, in order to advance the interests of its members and, more broadly, the entire business community.

11.     Plaintiff Oklahoma State Home Builders Association ("OSHBA") is a non-profit trade association separately incorporated but chartered with Plaintiff NAHB.  OSHBA is comprised of more than 2,500 members in 11 local home builder associations around the state of Oklahoma and their builder/associate members.   OSHBA represents the Oklahoma building industry.  OSHBA is headquartered in this judicial district at 917 N.E. 63rd Street, Oklahoma City, OK 73105 and has members in this judicial district.

12.     Plaintiff State Chamber of Oklahoma ("Oklahoma Chamber") is a non-profit, tax-exempt organization incorporated in the state of Oklahoma and headquartered in this judicial district at 330 N.E. 10th Street, Oklahoma City, OK 73104.  The Oklahoma Chamber represents more than

1,500 Oklahoma businesses and 350,000 employees.  It has been the State's leading advocate for business since 1926.  The Oklahoma Chamber has members that are headquartered in and operate in the state of Oklahoma and the Western District of Oklahoma.  The Oklahoma Chamber brings this action on behalf of its members, in order to advance the interests of its members and the business community of Oklahoma.

13.     Plaintiff National Chicken Council ("NCC") is the national, non-profit trade association for the chicken production and processing industry.  NCC member companies include chicken producer/processors, poultry distributors, and allied industry firms.  The producer/processors account for approximately 95 percent of the chickens produced in the United States.  NCC is headquartered in Washington, D.C.  NCC has members that are headquartered in and operate in the state of Oklahoma.

14.     Plaintiff National Turkey Federation ("NTF") is the national trade association for turkey farmers and processers.  Members of the NTF include growers, processors, hatchers, breeders, distributors, allied services and state associations.  NTF represents all segments of the turkey industry and is composed of over 300 member companies representing more than 95 percent of the turkey industry.  NTF is headquartered in Washington, D.C.

15.     Plaintiff U.S. Poultry & Egg Association ("USPOULTRY") is the world's largest poultry organization.  Members of USPOULTRY include producers and processors of broilers, turkeys, ducks, eggs, and breeding stock, as well as allied companies.  The association has affiliations in 26 states and member companies worldwide.  USPOULTRY is headquartered in Tucker, Georgia.  USPOULTRY has members that are headquartered in and operate in the state of Oklahoma.

16.     Plaintiffs' members include employers covered by the OSH Act (29 U.S.C. § 652(5)) who are responsible for providing safe and healthful working conditions to their employees and complying with OSHA standards and regulations, including those related to recording and reporting workplace injuries and illnesses.  The Rule at issue in this case will force businesses to have confidential and proprietary information made available to the public so that it may be misused thereby exposing them to significant reputational harm.  Further, many of Plaintiffs' members have adopted procedures for promoting and ensuring the safety and health of their employees.  Some of these procedures may be prohibited under the Rule, as they might not be deemed "reasonable" by the Agency.

17.     Defendant Thomas E. Perez is the Secretary of Labor and is subject to the APA.  *See* 5 U.S.C. § 551(1).  The Secretary is sued in his official capacity as head of the United States Department of Labor.

18.     Defendant David Michaels, Ph.D. is the Assistant Secretary of Labor for Occupational Safety and Health and is subject to the APA.  *See* 5 U.S.C. § 551(1).  The Assistant Secretary is sued in his official capacity as head of the Occupational Safety and Health Administration.

19.     Defendant Department of Labor ("DOL") is an agency of the United States government subject to the APA.  *See* 5 U.S.C. § 551(1).

20.     Defendant Occupational Safety and Health Administration ("OSHA") is an agency within DOL and is subject to the APA.  *See* 5 U.S.C. § 551(1).

## **JURISDICTION AND VENUE**

21.     This action arises under the APA, 5 U.S.C. § 500 *et seq.*, the OSH Act, 29 U.S.C. § 651 *et seq.*, and the First and Fifth Amendments to the Constitution of the United States.  Federal question jurisdiction therefore lies in this Court under 28 U.S.C. § 1331.

22.     Plaintiffs have associational standing to bring this suit on behalf of their members because those members will be directly and adversely affected by the Rule and thus would have standing to sue in their own right; because the interests Plaintiffs seek to protect are germane to their organizations' purposes; and because neither the claims asserted nor the relief requested requires an individual member to participate in this suit.  *See Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Plaintiffs also participated in the rulemaking process, by submitting comments and participating in a public meeting convened by OSHA.  Thus, plaintiffs' standing is self-evident based on the administrative record.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992).

23.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, and Plaintiffs OSHBA and Oklahoma Chamber reside in this judicial district and no real property is involved in this action.

## BACKGROUND

### Recordkeeping and Information Collection Under the OSH Act

24.     Section 8(c)(1) of the OSH Act provides that each "employer shall make, keep and preserve, and make available to the Secretary [of Labor] or the Secretary of Health and Human Services, such records … as the Secretary [of Labor] … may prescribe by regulation as necessary or appropriate for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses."  29 U.S.C. § 657(c)(1).

25.     Similarly, Section 8(c)(2) directs the Secretary of Labor to "prescribe regulations requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses other than minor injuries requiring only first aid treatment

and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job." 29 U.S.C. § 657(c)(2).

26.     Section 8(g)(2) of the Act provides the Secretary general authority to prescribe rules and regulations "necessary" to carry out his responsibilities under the Act.  29 U.S.C. § 657(g)(2). Section 24 of the Act also authorizes the Secretary to develop and maintain an effective program to collect, compile, and analyze occupational safety and health statistics.  29 U.S.C. § 673.

27.     Nothing in these provisions authorizes OSHA to publicly disseminate reports collected under the Rule.  Congress has not given the Agency the authority to publish injury and illness data and confidential business information, as it has with other regulatory agencies, such as the Mine Safety and Health Administration, *see, e.g.*, 30 U.S.C. § 813(h).

### OSHA's 2001 Recordkeeping Rule

28.     OSHA promulgated its first recordkeeping rule in 1971.  36 Fed. Reg. 12,612 (July 2, 1971).  Under the rule, certain employers covered by the OSH Act were required to maintain records about every workplace injury or illness involving death, loss of consciousness, days away from work, restriction of work or motion, transfer to another job, medical treatment other than first aid, or diagnosis of a significant injury or illness.  66 Fed. Reg. 5,916, 5,917 (Jan. 19, 2001).  Employers were required to keep track of these workplace injuries and illnesses on designated recordkeeping forms.  *Id.*

29.     On January 19, 2001, OSHA published a comprehensive revision to those rules to modernize, clarify, and expand occupational injury and illness reporting and recording (the "2001 rule").  66 Fed. Reg. 5,916 (Jan. 19, 2001).

30.     The Agency cited three primary reasons for the 2001 rule:  (1) "to provide information to employers whose employees are being injured or made ill by hazards in their workplace"; (2) to

provide a source of information to OSHA to conduct inspections and target its enforcement resources; and (3) to provide an accurate source of data for the Bureau of Labor Statistics ("BLS") to compile and publish national statistics on workplace injuries and illnesses.  66 Fed. Reg. at 5,916-17.  The 2001 rule created three separate recordkeeping forms:  (1) Form 300; (2) Form 301; and (3) Form 300A.  *Id.* at 6,130.

31.     The Form 300 "Log of Work-related Injuries and Illnesses" ("Form 300" or "OSHA 300 Log") requires employers to record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid.  *See* Form 300, attached as Exhibit 2.  In particular, it requires employers to record the employee's name, job title, date of injury or illness, and a description of the injury or illness, parts of the body affected, and the object/substance that directly made the employee injured or ill.  *Id.*  A warning at the top of Form 300 states:  "**Attention**:  This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes."  *Id.* (emphasis in original).

32.     The Form 301 "Injury and Illness Incident Report" ("Form 301") requires employers to collect and enter even *more* information on the injury or illness than is on the OSHA 300 Log, including information about the employee, the physician or other health care professional that may have treated the employee, and detailed information about the injury or illness involved and how the injury or illness developed.  *See* Form 301, attached as Exhibit 3.  Form 301 is incident-specific and must be completed for every work-related injury or illness that is included on the

OSHA 300 Log.  *Id*.  As with the Form 300, the Form 301 warns employers of the need to protect the confidentiality of the information to the extent possible.  *Id.*

33.     Finally, the Form 300A "Summary of Work-related Injuries and Illnesses" ("Form 300A") requires employers to annually compile aggregate information on certain work-related injuries and illnesses and post the information at the worksite from February 1 to April 30 of the year following the time period covered by the form.  *See* Form 300A, attached as Exhibit 4.  The Form 300A includes no personally identifiable information about individual injuries and illnesses that occurred at the worksite but does contain information about the number of employee hours worked.  *Id.*  The 2001 rule required certain employers to submit their Forms 300A to OSHA on an annual basis as part of the OSHA Data Initiative, a program established by OSHA to collect information to use to develop enforcement targeting.  29 C.F.R. § 1904.41.

34.     The crux of the 2001 rule was to require employers to record on the OSHA 300 Log and Form 301 certain injuries and illnesses that were related to work—as defined in the regulation— and that met the severity criteria established by Congress in 29 U.S.C. § 657(c)(2) ("medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job").

35.     OSHA also specifically acknowledged the privacy interests of injured and ill employees, explaining:   "OSHA agrees that confidentiality of injury and illness records should be maintained except for those persons with a legitimate need to know the information.  This is a logical extension of the agency's position that a balancing test is appropriate in determining the scope of access to be granted employees and their representatives."  66 Fed. Reg. at 6,057.

36.     Thus, OSHA required employers to redact the names of employees from the OSHA 300 Logs for certain injuries and illnesses deemed to be "privacy cases."  29 C.F.R. § 1904.29(b)(7).

37.     It also limited the extent to which employers could share injury and illness information to others besides those specifically enumerated in the rule.  *Id.* at § 1904.29(b)(10).

## OSHA's Proposal to Amend the 2001 Rule

38.     On November 8, 2013, OSHA published a Notice of Proposed Rulemaking ("NPRM") entitled "Improve Tracking of Workplace Injuries and Illnesses," 78 Fed. Reg. 67,254 (Nov. 8, 2013), to revise the 2001 rule.

39.     OSHA proposed to require certain employers to submit electronically their OSHA 300 Logs and Forms 301, and 300A to OSHA on a regular basis, and the Agency stated that it would make this information publicly available on an online database.  *Id.*  The purported safety and health benefits from the rule flowed from the Agency's commitment to make the data publicly available.  OSHA stated that "the online posting of establishment-specific injury and illness information will encourage employers to improve and/or maintain workplace safety/health to support their reputations as good places to work or do business with."  *Id.* at 67,258.  In the proposed rule OSHA cited no evidence or data to support this assertion.

40.     OSHA stated that it had authority for this proposed rule under Sections 8(c)(1), (c)(2), (g)(2), and 24 of the OSH Act.  *Id.* at 67,255.  None of these sections, however, provide OSHA with authority to collect information for the purpose of public dissemination.

41.     Numerous stakeholders, including some of the Plaintiffs in this cause of action, filed comments objecting to the proposed rule.  *See* Docket No. OSHA-2013-0023.

42.     Plaintiff NAHB, for example, commented that the OSH Act does not provide OSHA the legal authority to issue the regulation.  Docket ID: OSHA-2013-0023-1408 (posted Mar. 14, 2014), p. 3.  NAHB stated that there is no express authority granted to OSHA anywhere in the statute to make the various recordkeeping forms available to the public:  "The OSH Act omits

any language that would provide OSHA authority to make an employers' injury and illness records available to the public." *Id.* at 7.

43.     Similarly, Plaintiff Chamber stated, "Conspicuously absent from [Sections 8(c)(1), (c)(2), (g)(2), and 24 of the OSH Act] is any mention, let alone express or implied authority, that OSHA may create an online database meant for the public dissemination of an employer's injury and illness records containing confidential and proprietary information.  Had Congress envisioned or intended that the Secretary of Labor would have the authority to publish this information it surely would have so provided.  But of course, it did not and has not.  Nor has such authority been contemplated by the numerous bills to amend the OSH Act that have been proposed." Docket ID: OSHA-2013-0023-1396 (posted Mar. 14, 2014), p. 3.

44.     In addition, Plaintiff NAHB stated that public disclosure of confidential and proprietary business information would harm employers and employees.  It explained:

> In NAHB's view, OSHA is taking a very cavalier approach to the privacy interests of employees and others who may be affected by the public release of this information.  At the outset, it is important to emphasize that there are several work-related injuries and illnesses that employees would prefer that OSHA not make public to the entire world *via* the internet.  OSHA recognizes this to a degree with its provisions for privacy cases.  However, particularly in smaller communities, an employee's identity can be readily determined from a published report.  Perhaps the employee is a health care professional who contracted an infectious disease from a patient.  Or perhaps the employee was a victim of an assault at the workplace.  These are *real* issues that can and have occurred and OSHA seems to be oblivious to the concerns of employees whose information is going to be published for everyone to see in every country in the world *via* the internet.

Docket ID:  OSHA-2013-0023-1408, 14-15 (emphasis in original).

45.     NAHB also objected to the "benefits" that the Agency claims will occur as a result of the rule, stating:

> [The rule's] benefits, examined individually and collectively, do not support the proposed rule.  Strikingly, there is *no* data or evidence cited in the proposal to

suggest that these benefits will even occur – no studies, no anecdotal references. This is nothing more than speculation by OSHA of what *may* occur if the proposed rule is finalized.

*Id.* at 20 (emphasis in original).

46.     Plaintiffs USPOULTRY, NCC, and NTF also objected to several aspects of the proposed rule.  In particular, they commented that the entire premise of the rule—that the public will make judgments about the safety and health programs of employers based on injury and illness data— with no context or explanation, is at odds with the "no-fault" recordkeeping system.  Docket ID: OSHA-2013-0023-1109 (posted Mar. 7, 2014), pp. 2-3.

> Providing raw data, out of context, to those who do not know how to interpret it will also create significant issues.  Assessing an employer's safety and health efforts or programs is a complicated challenge.  Injury rates are just one metric and often are not indicative of the strength of a safety and health program. Despite this, OSHA is encouraging the public to make judgments about a safety and health program based on this limited data.  This is simply wrong and we believe counterproductive to workplace safety and health.

*Id.* at 3.

47.     On January 9-10, 2014, OSHA held a public meeting on the proposed rule.  81 Fed. Reg. at 29,625.   Numerous stakeholders who participated in the public meeting repeated the objections to the proposed rule set forth in written comments.

### OSHA's Supplemental Notice on Disincentives to Reporting

48.     After initially reviewing the rulemaking record generated from the proposed rule, and comments made at the public meeting, OSHA sought additional comment on one concern raised by some stakeholders:

> At a public meeting on the proposal, many stakeholders expressed concern that the proposal could motivate employers to under-record their employees' injuries and illnesses.  They expressed concern that the proposal could promote an increase in workplace policies and procedures that deter or discourage employees from reporting work related injuries and illnesses.   These include adopting

unreasonable requirements for reporting injuries and illnesses and retaliating against employees who report injuries and illnesses.

79 Fed. Reg. 47,605 (Aug. 14, 2014).

49.    The Supplemental Notice of Proposed Rulemaking was just six pages in the *Federal Register. Id.*

50.    In the supplemental notice, OSHA specifically sought comment on whether "to (1) require that employers inform their employees of their right to report injuries and illnesses; (2) require that any injury and illness reporting requirements established by the employer be reasonable and not unduly burdensome; and (3) prohibit an employer from taking adverse action against employees for reporting injuries and illnesses." *Id.* at 47,606.

51.    While OSHA identified the three areas above as potential means to address the concern alleged by some stakeholders at the public meeting, OSHA provided no regulatory text for the public's consideration in the supplemental notice despite the notice being labeled a Supplemental Notice of Proposed Rulemaking.  *Id.* at 47,605-10.

52.    The Agency also never defined what a "reasonable" or "unreasonable" reporting procedure might be in the Supplemental Notice.  *Id.*  Instead, the Agency listed some examples of policies that could be considered unreasonable, such as highly burdensome reporting procedures or penalizing employees for failing to report an injury within a specific time period. *Id*. at 47,608.

53.    In addition, OSHA sought comment on a variety of supposed "adverse actions" that certain participants "mentioned" in the public meeting on the proposed rule that could impact injury and illness reporting.  *Id.* at 47,608.

54.    Numerous stakeholders, including several of the Plaintiffs, submitted comments to the Agency on the Supplemental Notice.  *See* 81 Fed. Reg. at 29,625.

55.     Many objected to the nature of the Supplemental Notice, which consisted primarily of 18 questions, as being much more in the style of an Advance Notice of Proposed Rulemaking, stating that it was in violation of the APA as it lacked sufficient notice of what would be required and thus did not provide affected parties any meaningful opportunity to comment.  *Id*. at 29,669.

56.     Other commenters objected to a completely undefined requirement for "reasonable" reporting procedures, noting that such a requirement could be interpreted by OSHA as prohibiting certain safety disciplinary programs, safety incentive programs, and workplace drug and alcohol testing programs that have been shown to improve safety and health in the workplace.  *Id*. at 29,670.

57.     Commenters also highlighted OSHA's announced intention to contradict the statutory scheme for addressing allegations of retaliation through Section 11(c) of the OSH Act by granting itself the authority to initiate claims even as it admitted that the statute does not permit this:

> The advantage of this provision [the unspecified proposed supplemental regulation] is that it would provide OSHA with additional enforcement tools to promote the accuracy and integrity of the injury and illness records employers are required to keep under Part 1904.  *For example, under 11(c), OSHA may not act against an employer unless an employee files a complaint.  Under the additions to the proposed rule under consideration, OSHA would be able to cite an employer for taking adverse action against an employee for reporting an injury or illness, even if the employee did not file a complaint.*

79 Fed. Reg. at 47,607 (emphasis added).

### The Final Rule

58.     Despite the significant opposition to the proposed rule and the issues identified in the Supplemental Notice by a variety of stakeholders, on May 12, 2016 OSHA issued the Rule, adopting almost all of the electronic recording and reporting obligations as originally proposed and adding requirements related to "reasonable" employee reporting procedures.  OSHA also

16

proceeded to grant itself the authority to pursue retaliation complaints outside of the congressionally mandated Section 11(c) process.

59.     The Rule was subsequently revised to make minor corrections on May 20, 2016.

60.     The Rule amends 29 C.F.R. §§ 1910.35, 1910.36, and 1910.41 and a copy is attached and incorporated by reference.

61.     The Rule carried forward the proposal to require certain employers to electronically submit their OSHA recordkeeping forms to the Agency.  81 Fed. Reg. at 29,692.  Thus, the Rule amended § 1904.41 to require employers that have 250 or more employees at any time during the previous calendar year, to electronically submit once a year information from the OSHA 300 Log, Form 301, and Form 300A.  *Id.*  For employers with 20 or more but fewer than 250 employees in designated industries, employers are required to electronically submit Form 300A Summary of Work-Related Injuries and Illnesses once a year to OSHA.  *Id.*  In addition, the Rule provides that some employers that are not automatically covered by the requirements above may be notified separately to submit certain records to the Agency.  *Id.*

62.     The Rule does not require that employers submit the names or other personally identifiable information to the Agency:

> *(2) If I have to submit information under paragraph (a)(1) of this section, do I have to submit all of the information from the recordkeeping form?*  No, you are required to submit all of the information from the form *except* the following:
> (i) Log of Work-Related Injuries and Illnesses (OSHA Form 300):  Employee name (column B).
> (ii) Injury and Illness Incident Report (OSHA Form 301):  Employee name (field 1), employee address (field 2), name of physician or other health care professional (field 6), facility name and address if treatment was given away from the worksite (field 7).

*Id.*  However, there is no exemption for employers submitting the number of employees, or hours worked that are part of the Form 300A.

63.     OSHA states in the Preamble to the Rule that it will take the work-related injury and illness information submitted electronically by covered employers and will post such information online to make it available to the public.  81 Fed. Reg. at 29,624-25.  This online posting and publication of employer injury and illness data will disclose business confidential information, such as total number of employees and total number of employee hours from Form 300A.

64.     The Freedom of Information Act ("FOIA") prohibits the government from releasing "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  OSHA has previously taken the position that disclosure of the type of information to be made public by the Rule could cause substantial competitive injury to employers.  In *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp. 2d 394, 402 (S.D.N.Y. 2004), OSHA specifically stated that information from Form 300A was exempt from disclosure under the Freedom of Information Act because such disclosure "can cause substantial competitive injury."

65.     OSHA claims that the "main purpose of this section of the final rule is to prevent worker injuries and illnesses through the collection and use of timely, establishment-specific injury and illness data" and that "employers, employees, employee representatives, the government, and researchers *may* be better able to identify and mitigate workplace hazards and thereby prevent worker injuries and illnesses."  81 Fed. Reg. at 29,629 (emphasis added).

66.     The Rule also amended § 1904.35(b)(1)(i) to state that employer procedures for employee reporting of work-related illnesses and injuries must be "reasonable" and that "[a] procedure is not reasonable if it would deter or discourage a reasonable employee from accurately reporting a workplace injury or illness."  81 Fed. Reg. at 29,691.

67.     OSHA provides no definition of what is a "reasonable" or "unreasonable" reporting procedure in the regulatory text that employers must follow.

68.     Only in the preamble commentary to the Rule, does OSHA provide some examples of procedures that it believes *might* be unreasonable.  But the preamble offers only vague guidance and mixed messages for employers regarding reporting procedures.  For example, in describing its position on timely reporting of injuries and illnesses, OSHA recognizes the interests of employers in ensuring timely reporting of injuries and illnesses, but then notes a balancing of fairness "to employees who cannot reasonably discover their injuries or illnesses" and the need for understanding the "overriding objective of part 1904."  81 Fed. Reg. at 29,670.  OSHA then states in undefined terms that "for a reporting procedure to be *reasonable* and not *unduly* burdensome, it must allow for reporting of work-related injuries and illnesses within a *reasonable* timeframe after the employee has realized that he or she has suffered a work-related injury or illness."  *Id.* (emphasis added).  An employer cannot have acceptable certainty that its policy is appropriate until OSHA makes a post hoc determination of whether it is (or is not).

69.     In the preamble, OSHA also suggests that certain employee safety incentive programs may be unreasonable under the Rule.  *See id.* at 29,673.

70.     OSHA does not define what it means by employee safety incentive programs in the Rule; however, the Agency notes that they "take many forms" and presumably some of these "forms" are problematic in OSHA's view.  *Id.*  OSHA suggests that the following programs *might* be unreasonable under the Rule and therefore prohibited:

- Entering all employees who have not been injured in the previous year in a drawing to win a prize;
- Rewarding a team of employees a bonus if no one from the team is injured over some period of time;
- Conducting an incentive program "predicated on workers remaining 'injury free'";

- Rate-based incentive programs that reward workers for achieving low rates of reported injuries and illnesses; and
- Offering monetary incentives up to $1,500 for employees if zero recordable injuries are reported.

81 Fed. Reg. at 29,673-74.

71.     OSHA also suggests in the preamble that mandatory post-injury drug and alcohol testing *might* deter reporting of workplace injuries or illnesses and thus would not be "reasonable" under the Rule.  *See id.* at 29,673.  As with the employee incentive programs described above, OSHA's regulatory text does not define precisely what type of drug and alcohol testing programs it finds unreasonable and therefore unlawful.  OSHA's terminology shifts throughout the discussion, referring to potentially problematic drug testing as "post-incident," "post-accident," or "post-injury."  *See id.*  OSHA suggests in the preamble that the Rule *might* prohibit any "post-incident testing" where the employer cannot determine that drug use was a likely contributor to the incident.  *Id.*

72.     In addition, the Rule added § 1904.35(b)(1)(iv) to explicitly prohibit employers from "discharg[ing] or in any manner discriminat[ing] against any employee for reporting a work-related injury or illness."  81 Fed. Reg. at 29,692.

73.     This provision goes far beyond the substantive prohibition against discrimination and the articulated procedures specified for discrimination claims found in Section 11(c) of the OSH Act. Section 11(c) prohibits discrimination where an employee "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf or himself or others of any right afforded by this Act."  29 U.S.C. § 660(c)(1).  An employee who allegedly suffered such discrimination may then "file a complaint with the Secretary," who must then conduct an investigation to determine whether discrimination occurred.  *Id.* at § 660(c)(2).

If the Secretary determines that there has been a violation, then the Secretary shall bring an enforcement action in federal court to obtain injunctive relief, as well as any appropriate reinstatement, rehiring, and backpay. *Id.*

74.    Congress enacted Section 11(c) to require a claim under the anti-discrimination provision to be brought before a United States district court on behalf of an employee who files a complaint with OSHA, placing jurisdiction with the United States district court to hear and decide these matters.

75.    With this added provision in § 1904.35(b)(1)(iv), OSHA is circumventing the procedural requirements provided in Section 11(c) and giving itself the right to pursue citations against employers for certain alleged retaliatory conduct and giving the Occupational Safety and Health Review Commission the jurisdiction to hear and decide these matters in contravention of the statute and congressional intent, as OSHA admits in its explanation:

> Section 11(c) only authorizes the Secretary to take action against an employer for retaliating against an employee for reporting a work-related illness or injury if the employee files a complaint with OSHA within 30 days of the retaliation. 29 U.S.C. 660(c).

> \* \* \*

> The final rule allows OSHA to issue citations to employers for retaliating against employees for reporting work-related injuries and illnesses and require abatement *even if no employee has filed a section 11(c) complaint.*

> \* \* \*

> OSHA anticipates that feasible abatement methods for violations of paragraph (b)(1)(iv) will mirror some of the types of remedies available under section 11(c); the goal of abatement would be to eliminate the source of retaliation and make whole any employees treated adversely as a result of the retaliation.  For example, if an employer terminated an employee for reporting a work-related injury or illness, a feasible means of abatement would be to reinstate the employee with back pay.

81 Fed. Reg. at 29,671 (emphasis added).

76.     The Rule also clarifies that 29 C.F.R. § 1904.36 is revised to state that Section 11(c) of the OSH Act also prohibits retaliating against employees for reporting work-related injuries or illnesses.  81 Fed. Reg. at 29,692.

77.     Finally, the Rule includes requirements that employers inform each employee of the procedures for reporting work-related injuries and illnesses, that employees have the right to report work-related injuries and illnesses, and employers are prohibited from discharging or in any manner discriminating against employees for reporting work-related injuries or illnesses.  *Id.* at 29,691.

### Effective Date

78.     The effective date of the Rule for the amendments to 29 C.F.R. §§ 1910.35 and 1910.36 was initially August 10, 2016.  However, OSHA delayed the enforcement of 29 C.F.R. § 1910.35 to November 1, 2016 in order to provide more time for additional outreach to employers and then again to December 1, 2016 in response to Judge Sam Lindsay's request in another legal challenge of this Rule in the U.S. District Court for the Northern District of Texas, Civil Action No. 3:16-CV-1998-L.

79.     The effective date for the remaining parts of the Rule is January 1, 2017.

80.     The Rule constitutes a final agency action by OSHA.

### FIRST CAUSE OF ACTION

**Section 1904.41 and the Public Dissemination of Employee Work-related Injuries and Illnesses Exceed OSHA's Statutory Authority Under the OSH Act in Violation of the Administrative Procedure Act**

81.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-80.

82.    The Administrative Procedure Act, 5 U.S.C. § 706(2)(C), directs a reviewing court to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

83.    Section 1904.41 and the public dissemination of reports of employee work-related injuries and illnesses exceed OSHA's statutory authority, jurisdiction, and limitations under the OSH Act.  OSHA's authority with respect to recordkeeping is limited, and Congress has not given the Agency the authority to publish injury and illness data and confidential business information, as it has with other regulatory agencies, such as the Mine Safety and Health Administration, *see, e.g.*, 30 U.S.C. § 813(h).

84.    For these reasons, Section 1904.41 and the Agency's public dissemination of employee work-related injuries and illnesses should be held unlawful and set aside.

## SECOND CAUSE OF ACTION

**Section 1904.41 and the Public Dissemination of Employee Work-related
Injuries and Illnesses is Arbitrary, Capricious, and Otherwise Contrary to Law in
Violation of the Administrative Procedure Act**

85.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-84.

86.    The Administrative Procedure Act directs a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious … or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

87.    In rulemaking under the APA, an agency acts arbitrarily and capriciously if it ignores significant evidence in the record, draws conclusions that conflict with the record evidence, relies on contradictory assumptions or conclusions, or fails to consider an important aspect of the problem it purports to be remedying.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).   An agency must "consider [all] important aspect[s] of the

problem," and may not "offer[] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* An agency also has an "obligation to consider" alternatives that are "neither frivolous nor out of bounds," *Chamber of Commerce v. SEC*, 412 F.3d 133, 144-45 (D.C. Cir. 2005), and to respond to key comments that "if true, . . . would require a change in [the] proposed rule," *La. Fed. Land Bank Ass'n, FLCA v. Farm Credit Admin.*, 336 F.3d 1075, 1080 (D.C. Cir. 2003) (internal quotation marks and citations omitted). An agency also must acknowledge and offer a reasoned explanation for any change in its position. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

88.     In promulgating Section 1904.41 and determining that the Agency would disseminate employee work-related injuries and illnesses in an online electronic database available to the public, OSHA acted arbitrarily, capriciously, and otherwise contrary to law. The rulemaking record fails to demonstrate any safety and health benefit from Section 1904.41 and the public dissemination of employee work-related injuries and illnesses. The Agency failed to consider evidence of reputational harm to businesses based on misleading information of the safety and health efforts of employers. OSHA also failed to explain its change in position with respect to the public release of information previously found by the Agency to be confidential and not subject to public dissemination.

89.     For these reasons, Section 1904.41 and the Agency's public dissemination of employee work-related injuries and illnesses should be held unlawful and set aside.

## THIRD CAUSE OF ACTION

### Sections 1904.35 and 1904.36(b)(1) Exceed OSHA's Statutory Authority Under the OSH Act in Violation of the Administrative Procedure Act

90.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-89.

91.     The APA, 5 U.S.C. § 706(2)(C), directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

92.     Sections 1904.35 and 1904.36(b)(1) exceed OSHA's statutory authority, jurisdiction, and limitations under the OSH Act.  Section 11(c) of the OSH Act, 29 U.S.C. § 660(c), prescribes the exclusive procedure for employee discrimination and retaliation claims pertaining to safety and health in the workplace.  Sections 1904.35 and 1904.36(b)(1) are contrary to Section 11(c).

93.     Congress did not provide OSHA the authority to perform enforcement actions or issue citations on its own, without having received a complaint from an employee, for what it would deem to be discriminatory or retaliatory actions.

94.     The Rule circumvents Congress's determination to create a specific statutory scheme to address discrimination and retaliation claims brought by employees through the procedures specified in Section 11(c) of the OSH Act.

95.     OSHA claims authority under the Rule to request backpay and reinstatement for civil citations of retaliatory conduct in the absence of a complaint from an employee.  Nothing in the OSH Act grants this authority to OSHA or to the U.S. Occupational Safety and Health Review Commission that adjudicates contested OSHA citations.

96.     The Rule thus impermissibly conflicts with Congress's carefully crafted legislation to address alleged retaliatory action as it pertains to safety and health in the workplace and exceeds OSHA's authority under the OSH Act.

97.     For these reasons, Sections 1904.35 and 1904.36(b)(1) should be held unlawful and set aside.

## FOURTH CAUSE OF ACTION

### Sections 1904.35 and 1904.36(b)(1) are Arbitrary, Capricious, and Otherwise Contrary to Law in Violation of the Administrative Procedure Act

98.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-97.

99.    The Administrative Procedure Act directs a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious … or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

100.    In rulemaking under the APA, an agency acts arbitrarily and capriciously if it ignores significant evidence in the record, draws conclusions that conflict with the record evidence, relies on contradictory assumptions or conclusions, or fails to consider an important aspect of the problem it purports to be remedying.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).   An agency must "consider [all] important aspect[s] of the problem," and may not "offer[] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.*  An agency also has an "obligation to consider" alternatives that are "neither frivolous nor out of bounds," *Chamber of Commerce v. SEC*, 412 F.3d 133, 144-45 (D.C. Cir. 2005), and to respond to key comments that "if true, . . . would require a change in [the] proposed rule," *La. Fed. Land Bank Ass'n, FLCA v. Farm Credit Admin.*, 336 F.3d 1075, 1080 (D.C. Cir. 2003) (internal quotation marks and citations omitted).  An agency also must acknowledge and offer a reasoned explanation for any change in its position.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

101.    In promulgating Sections 1904.35 and 1904.36(b)(1), OSHA acted arbitrarily, capriciously, and otherwise contrary to law.  The Rule's requirement that employers adopt "reasonable" reporting procedures is so vague and ambiguous as to deprive employers of notice

of their obligations under the Rule.  Further, the rulemaking record does not support the need to

implement such a vague and ambiguous obligation, which has the potential to prohibit a myriad

of employer procedures and processes designed to improve workplace safety and health.

102.    For these reasons, Sections 1904.35 and 1904.36(b)(1) should be held unlawful and set

aside.

### FIFTH CAUSE OF ACTION

**OSHA Enacted Sections 1904.35 and 1904.36(b)(1) Without Proper Observance of
Procedure Required by Law in Violation of the Administrative Procedure Act**

103.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-102.

104.    The Administrative Procedure Act directs a reviewing court to "hold unlawful and set

aside agency action, findings, and conclusions found to be . . . without observance of procedure

required by law."  5 U.S.C. § 706(2)(D).

105.    Under the APA, an agency must provide notice and an opportunity to comment on its

proposed rules.  5 U.S.C. § 553(c).  In that notice-and-comment process, the agency must

respond to "relevant" and "significant" public comments, *Home Box Office, Inc. v. FCC*, 567

F.2d 9, 35 & n.58 (D.C. Cir. 1977), and to those comments "which, if true, . . . would require a

change in [the] proposed rule," *La. Fed. Land Bank Ass'n*, 336 F.3d at 1080 (internal quotation

marks and citations omitted).  "[A]n agency has a duty to consider responsible alternatives to its

chosen policy and to give a reasoned explanation for its rejection of such alternatives."  *Farmers*

*Union Cent. Exchange, Inc. v. FERC*, 734 F.2d 1486, 1511 (D.C. Cir. 1984).

106.    The rulemaking process OSHA used in promulgating the "supplemental" portions of the

Rule failed to provide interested parties with adequate and fair notice of the final rule and denied

interested parties an adequate opportunity to meaningfully comment.  In doing so, OSHA's

adoption of a broad and ambiguous rule, through which OSHA would seek to prohibit certain

programs that improve workplace safety and health but that OSHA might deem unreasonable, prejudiced Plaintiffs and their members.

107.    For these reasons, Sections 1904.35 and 1904.36(b)(1) should be held unlawful and set aside.

## SIXTH CAUSE OF ACTION

**Section 1904.41 and the Public Dissemination of Employee Work-related Injuries and Illnesses Violates the First Amendment to the U.S. Constitution in Violation of the Administrative Procedure Act**

108.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-107.

109.    Under the Administrative Procedure Act, agency action shall be vacated and set aside where it is contrary to constitutional right or privilege.  5 U.S.C. § 706(2)(B).

110.    The First Amendment's Free Speech Clause protects against compelled speech.  "For corporations as for individuals, the choice to speak includes within it the choice of what not to say."  *Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal*., 475 U.S. 1, 16 (1986) (plurality op.).

111.    The online posting and publication of employer injury and illness data will disclose confidential business information, such as total number of employees and total number of employee hours from Form 300A.  OSHA has previously taken the position that disclosure of the type of information to be made public by the Rule could cause substantial competitive injury to employers in *New York Times Co. v. U.S. Dep't of Labor*, 340 F. Supp. 2d 394, 402 (S.D.N.Y. 2004).

112.    The Rule violates the First Amendment because it forces employers to provide this confidential business information to the public, and cannot survive any applicable level of constitutional scrutiny.

113.    The OSH Act cannot be construed to permit OSHA the authority to violate the First Amendment rights of employers in this regard.  Indeed, Congress did not intend for this to occur, thus providing OSHA with only limited authority with respect to requiring employers to collect and maintain injury and illness records.  Had Congress wished to provide the authority to publish such information, it would have done so expressly, as it has done in implementing statutes of other regulatory agencies.

114.    For these reasons, Section 1904.41 and the Agency's public dissemination of employee work-related injuries and illnesses should be held unlawful and set aside.

### SEVENTH CAUSE OF ACTION

**Sections 1904.35 and 1904.36(b)(1) Violate the Fifth Amendment
to the U.S. Constitution in Violation of the Administrative Procedure Act**

115.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-114.

116.    Under the Administrative Procedure Act, agency action shall be vacated and set aside where it is contrary to constitutional right or privilege.  5 U.S.C. § 706(2)(B).

117.    The Due Process Clause of the Fifth Amendment requires that regulated parties be given fair notice of conduct that is prohibited or required.  *FCC v. Fox TV Stations, Inc*., 132 S. Ct. 2307, 2317 (2012).  "[R]egulated parties should know what is required of them so they may act accordingly [and] … precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."  *FCC v. Fox TV Stations, Inc*., 132 S. Ct. at 2317.

118.    The requirement in Section 1904.36(b)(1) that employers adopt "reasonable" reporting procedures violates the due process protections provided for under the Fifth Amendment to the U.S. Constitution.  The requirement is so vague and ambiguous that it provides no guidance as to what is acceptable or unacceptable with respect to employee injury and illness reporting

procedures.    It subjects employers to citations and potentially significant penalties for engaging—or not engaging—in conduct that is undefined by the Agency.

119.    For these reasons, Sections 1904.35 and 1904.36(b)(1) should be held unlawful and set aside.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

A.    A declaratory judgment and order that the Rule is unlawful for the reasons set forth above;

B.    An order vacating and setting aside the Rule;

C.    An order awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

D.    An order granting such other and further relief as this Court deems appropriate.


Dated:  January 4, 2017

Respectfully submitted,

*/s/ Sam R. Fulkerson*
Sam R. Fulkerson, OBA #14370 (Local Counsel)
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Tel:     (405) 235-9621
Fax:     (405) 235-0439
sam.fulkerson@mcafeetaft.com

JACKSON LEWIS P.C.

*/s/ Bradford T. Hammock*
Bradford T. Hammock (Lead - *Pro Hac* pending)
Tressi L. Cordaro (*Pro Hac* pending)
Raymond Perez (*Pro Hac* pending)
10701 Parkridge Boulevard, Suite 300
Reston, VA 20191
Telephone:  (703) 483-8300
Facsimile:  (703) 483-8301
HammockB@jacksonlewis.com
Tressi.Cordaro@jacksonlewis.com
Raymond.Perez@jacksonlewis.com

*Attorneys for Plaintiffs*


*Of Counsel:*

David Jaffe, Esq. (*Pro Hac* pending)
Felicia Watson, Esq. (*Pro Hac* pending)
National Association of Home Builders
  of the United States
1201 15th Street, NW
Washington, DC 20005
Telephone:  (202) 266-8200
*Attorneys for Plaintiff National Association of*
*Home Builders of the United States*

Steven P. Lehotsky  (*Pro Hac* pending)
Janet Galeria (*Pro Hac* pending)
U.S. Chamber Litigation Center
1615 H Street NW
Washington, DC 20062
Telephone:  (202) 463-5337
*Attorneys for Plaintiff Chamber of Commerce*
*of the United States of America*