IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

| | |
|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, *et al.*, ) ) ) ) ) | |
| PLAINTIFFS, ) ) | CIV-17-009-R |
| v. ) ) | |
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, in his official capacity, *et al.*, ) ) ) ) | |
| DEFENDANTS. ) | |

_____

## DEFENDANTS' BRIEF IN RESPONSE TO PUBLIC HEALTH INTERVENORS' MOTION TO INTERVENE

A government agency defending a regulation against a facial challenge has at least as much incentive and ability to defend that regulation, and to represent the interests of those who support it, as any member of the public.  Accordingly, any member of the public who seeks to intervene as of right in defense of a regulation must first clear a high bar where, as here, the government and the would-be intervenor both seek to defend whatever provisions of the challenged regulation are at issue in litigation.  Because the applicants for intervention here have not—and cannot—clear that bar in this case, the Court should deny their motion to intervene, insofar as they seek to intervene as of right.  Defendants take no position on whether the Court should nonetheless grant their request for permissive intervention.

## BACKGROUND

Four entities that work in the field of public health—the Public Citizen Health Research Group ("HRG"), the American Public Health Association ("APHA"), the Council of State and Territorial Epidemiologists ("CSTE"), and the Center for Media and Democracy ("CMD") (collectively, "Public Health Intervenors")—have moved to intervene as defendants in this challenge to a 2016 Occupational Safety and Health Administration ("OSHA") rule. *See* Mot. Intervene, ECF No. 46. The rule at issue, known as the Recordkeeping Modernization Rule ("the Rule"), principally provides that certain employers must submit injury and illness data electronically, that employers must establish reasonable reporting procedures for injuries and illnesses, and that employers may not retaliate against employees for reporting an injury or illness. *See* Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29,624 (May 12, 2016), *as revised at* 81 Fed. Reg. 31,854 (May 20, 2016).

Plaintiffs—a collection of trade and business associations—commenced their facial challenge to the Rule on January 4, 2017. Compl., ECF No. 1. They named as defendants the federal agencies and federal officials (collectively, "the Government") charged with enforcing the Rule. *See id.* ¶¶ 17-20. The Complaint principally alleges violations of the Administrative Procedure Act, as well as the First and Fifth Amendments. *Id.* ¶¶ 81-119.

The Public Health Intervenors filed a motion to intervene, in which they announced their intention to support the Rule, on March 21, 2017. *See* Mot. Intervene. The Public Health Intervenors contend that they are entitled to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2), and, in the alternative, that the Court should authorize

permissive intervention, pursuant to Federal Rule of Civil Procedure 24(b). *Id.* On April 5, 2017, the Court granted the Government's request to stay the deadlines in the case for 60 days, including the deadline to oppose the Public Health Intervenors' motion to intervene. *See* Order Grant. Mot. Stay, ECF No. 60.

## ARGUMENT

Federal Rule of Civil Procedure 24 provides two avenues for intervention—intervention as of right and permissive intervention. To intervene as of right, an applicant must either be "given an unconditional right to intervene by a federal statute" or must meet each of the four requirements identified in Rule 24(a)(2). Fed. R. Civ. P. 24(a). Because the Public Health Intervenors do not claim any statutory right to intervene, *see* Br. Supp. Mot. Intervene ("Public Health Br."), ECF No. 47, at 5-6, they must satisfy all of Rule 24(a)(2)'s requirements to justify intervention as of right.[1] Those four requirements are:

> (1) the motion is timely, (2) the movant claims an interest relating to the property or transaction which is the subject of the action, (3) the movant's interest may be impaired or impeded, and (4) the movant's interest is not adequately represented by existing parties.

---

[1] In this circuit, intervenors seeking the same relief as the party that they seek to support do not need to separately establish Article III standing to intervene under Rule 24. *See San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc). As the Supreme Court recently confirmed though, intervenors *do* need to demonstrate that their participation satisfies the requirements of Article III if at any point they "seek[] different relief." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, No. 16-605, --- S. Ct. ---, 2017 WL 2407473, at *2 (U.S. June 5, 2017); *see also WildEarth Guardians v. U.S. Forest Serv.*, 778 F. Supp. 2d 1143, 1151 (D.N.M. 2011) (defendant-intervenor needed Article III standing to challenge attorneys' fees provision of settlement between original parties). The Public Health Intervenors have not attempted to establish Article III standing in their brief, which indicates that they seek the same result as the Government in this litigation.

- 3 -

*Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1231 (10th Cir. 2010) (alterations omitted) (quoting *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005)).  The Government does not dispute that three of the Public Health Intervenors satisfy the first three of these requirements.[2]  But the Public Health Intervenors do not satisfy the fourth requirement because they have not shown—and could not show—that the Government would inadequately represent their interests.

The "burden is on the [Public Health Intervenors] . . . to show that the representation by the existing parties may be inadequate."  *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).  Although that burden has sometimes been described as "minimal," *id.*, it increases to the point of being presumptively unmet when the party seeking intervention has "the same" objectives in litigation as a governmental agency.  *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regulation Comm'n*, 787 F.3d 1068, 1072–73 (10th Cir. 2015); *see also* 7C Charles Alan Wright et al., Federal Practice and Procedure: Civil § 1909 (3d ed., rev. 2017) (explaining that courts require "a very strong showing of inadequate representation" in the

_____

[2] As acknowledged in their brief, only "[t]hree of the Public Health Intervenors filed comments in support of the Rule."  Public Health Br. at 8.  Moreover, the cases the Public Health Intervenors cite emphasize the importance of submitting such comments in assessing whether a would-be intervenor has an interest sufficient to intervene in a challenge to agency action.  *See, e.g. WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010) (highlighting comments intervenor made to the National Park Service during rulemaking).  The fourth public-health-related entity, CMD, has explained that its interest relates to its desire to use the data on injuries and illnesses that OSHA may publish.  *See* Public Health Br. at 5.  But CMD has not explained how its interest differs from that of any member of the general public who is interested in injury and illness data, and who could just as easily want to use any such data for its purposes.

"rare cases" permitting intervention when "the United States, or some other governmental agency, represents the public interest"). In those situations, the would-be intervenor must overcome a presumption that "representation is adequate." *Tri-State*, 787 F.3d at 1072-73. This presumption exists "even though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency." *Id.* (alterations in original) (quoting *City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)). And to overcome the presumption, the would-be intervenor "must make 'a concrete showing of circumstances'" that render the government's representation inadequate, such as by showing "that there is collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed to represent the applicant's interest." *Id.* at 1073 (citation omitted).

The presumption of adequate representation applies here because the Government and the Public Health Intervenors share the same litigation objective: to defend the Recordkeeping Modernization Rule. The named defendants in this case are the federal agencies and federal officials charged with enforcing the Rule, which was issued pursuant to a Congressional delegation of authority. *See* 81 Fed. Reg. at 29,625 ("OSHA is issuing this final rule pursuant to authority expressly granted by sections 8 and 24 of the Occupational Safety and Health Act."); *see also* 29 U.S.C. §§ 657, 673. Those defendants are represented by the Department of Justice, which is charged with attending "to the interests of the United States." 28 U.S.C. § 517. As long as the Rule remains in force—in whatever form it may take after any additional rulemaking—the Department of Justice's

interests include defending the Rule in court.  For the purposes of this litigation then, the Government's and the Public Health Intervenors' objectives are identical.

The Public Health Intervenors, however, have not made the "concrete showing" required to overcome the presumption that the Government will adequately represent their interests.  *See Tri-State*, 787 F.3d at 1072-73.  Instead, they rely on the argument that the new administration may "rescind or weaken" some of the "regulations promulgated by the previous administration," including the Recordkeeping Modernization Rule.  Public Health Br. at 9.  But that argument is a red herring.  Any changes to the Rule would need to be made through the rulemaking process, not this litigation.[3]  In other words, although the Government could propose changing the contours of the rule through future rulemaking, the Public Health Intervenors have offered nothing to suggest that the Government's commitment to defending those provisions of the Rule that remain in place will shift.

To the extent the Public Health Intervenors may disagree with policy changes that could result from any additional rulemaking, the appropriate forum for raising such concerns would be any future notice-and-comment period.  But as relevant here, even if the Public Health Intervenors were granted intervention as of right, they would not be able to defend any provisions of the Rule that are modified through future rulemaking.  Rather, the Public Health Intervenors and the Government alike would be limited to defending

---

[3] Consistent with that distinction, OSHA has announced on its website that it "intends to propose" a rule that would extend the July 1, 2017 deadline for certain employers to submit the first batch of information required under the Rule.  *OSHA Injury and Illness Recordkeeping and Reporting Requirements*, Occupational Safety and Health Administration, https://www.osha.gov/recordkeeping/index.html (last visited June 12, 2017).

those provisions of the Rule that remain in place, as claims related to the modified

provisions would be moot:

> When a plaintiff's complaint is focused on a particular statute, regulation, or rule
> and seeks only prospective relief, the case becomes moot when the government
> repeals, revises, or replaces the challenged law and thereby removes the
> complained-of defect. *See, e.g., Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474, 478
> . . . (1990) (amendments to statute); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103
> . . . (1982) (per curiam) (amendment of regulations).

*Ozinga v. Price*, 855 F.3d 730, 734  (7th Cir. 2017); *see Citizen Ctr. v. Gessler*, 770 F.3d

900, 908 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 1896 (2015) (claim is moot "when a

challenged regulation is repealed and the government does not openly express intent to

reenact it").[4]

The two cases the Public Health Intervenors cite with respect to adequacy of

representation do not displace the presumption that the Government will adequately

represent their interests because in those cases, the government's interests and the putative

intervenors' interests were not identical.   Rather, each case involved a particularized

dispute over land or the environment, and there was a concrete reason why the

Government's and the intervenor's objectives were not aligned.   The only published case

the Public Health Intervenors cite is *WildEarth Guardians v. National Park Service*, 604

F.3d 1192 (10th Cir. 2010), where even though the Tenth Circuit did not decide the issue

---

[4] The prospect of such mootness flowing from OSHA's recently announced plan to issue
a modifying regulation could well mean that this Court should forbear from deciding the
present intervention motion at this time, particularly given that potential future
modifications to the Rule could conceivably cause the Public Health Intervenors to
reconsider their participation in this litigation.

of adequate representation,[5] the possibility of divergent interests was clear.  That litigation concerned the National Park Service's ("NPS") "elk population management plan" for Rocky Mountain National Park, which included a provision allowing "qualified volunteers" to "lethally reduce, i.e., 'cull,' the elk . . . ."  *Id.* at 1194.  The plaintiff filed suit to challenge the plan, arguing that the court should "compel the NPS to consider releasing fertile gray wolves as an elk management alternative" instead.  *Id.* at 1195.  Safari Club sought to intervene, citing (among other reasons) that some of its members had volunteered to cull the elk—an opportunity that would have been eliminated if the plaintiff prevailed.  *Id.*  Even though the NPS and Safari Club may have shared an interest with respect to certain aspects of managing the elk population, Safari Club also had a private interest in defending its members' ability to participate in elk culling—an interest that the NPS could not have shared.  Given that the issue in *WildEarth Guardians* was how, not if, to manage the elk population, the intervenor's interest in one particular method for managing the elk population was not identical to the government's more general interest in managing the elk population one way or another.

Similarly, in *New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Service*, 540 F. App'x 877 (10th Cir. 2013), the court awarded intervention as of right to several environmental groups where there were concrete disagreements between the groups and the Forest Service over the contours of a Travel Management Plan for the Santa Fe National

---

[5] *See WildEarth Guardians*, 604 F.3d at 1194 ("[O]n the record presented, we decline to determine whether any of the existing parties can adequately represent [the intervenor's] interest.").

Forest.  *See id.* at 878-79, 881 (noting, among other issues of disagreement, the environmental groups' dissatisfaction with the Forest Service's environmental impact statement).  The facts in *New Mexico* thus illustrate how, "[w]hen managing and regulating public lands, to avoid what economists call the 'tragedy of the commons,' the Government must inevitably favor certain uses over others."   *Utah Ass'n of Counties. v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)).  But the concerns that drove the court's decision in *New Mexico* are not at issue here because this dispute concerns a facial challenge to a nationwide rule, rather than a disagreement over how to balance competing environmental priorities on a discrete piece of land.

In sum, both decisions cited by the Public Health Intevenors "involve contentions that the government, when it has multiple interests to pursue, will not adequately pursue the particular interest of the applicant for intervention."   *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1203–04 (10th Cir. 2007) (en banc) (op. of Hartz, J.).[6]  But where "the government is a party pursuing a single objective"—as the Government is here with its defense of the Recordkeeping Modernization Rule—the "presumption" of adequate

---

[6] Judge Hartz's opinion was the lead opinion in the Tenth Circuit's en banc decision in *San Juan County*.  503 F.3d at 1167.  As the Tenth Circuit recently explained, six judges in that case determined that the intervenors did not have the interest necessary to intervene, and "thus had no occasion to address whether the [intervenors'] interests would be adequately represented by the United States."  *Tri-State*, 787 F.3d at 1072 n.1.  Accordingly, although Judge Hartz was writing for three judges in his discussion of adequate representation, *see id.*, a nine-judge majority held that intervention as of right should be denied.  *See San Juan Cty.*, 503 F.3d at 1167, 1207.

representation "should apply." *Id.* at 1204.  In this litigation, the Public Health Intervenors and the Government have an identical interest—defending the Rule—and the Public Health Intervenors have failed to identify a concrete manner in which the Government cannot adequately represent that shared interest.

The one allegedly divergent interest the Public Health Intervenors emphasize relates to what they call "the public disclosure *requirement*."  Public Health Br. at 10 (emphasis added).  Tellingly though, the Public Health Intervenors never point to any language in the Rule making public disclosure of injury and illness data *mandatory*.  That is because, unlike the provisions of the Rule that have binding effect, the discussion of data publication occurs only in the Rule's preamble.  *Compare* 81 Fed. Reg. at 29,691-94 (listing the provisions of the "Final Rule" to be codified in the Code of Federal Regulations, with no mention of data publication), *with id.* at 29,625 (explaining in the Rule's preamble that "OSHA *intends* to post" injury and illness data online (emphasis added)).  Because "[a]gency statements 'having general applicability and legal effect' are to be published in the Code of Federal Regulations," it "is not the norm" that preamble statements "constitute binding, final agency action susceptible to judicial review."  *NRDC v. EPA*, 559 F.3d 561, 564–65 (D.C. Cir. 2009) (quoting 44 U.S.C. § 1510(a)).  In other words, the Public Health Intervenors are attempting to justify their intervention by relying on a "provision" of the Rule that is not, in fact, binding on the Government.  Thus, they have failed to make the required showing for intervention as of right under Rule 24(a)(2).

## CONCLUSION

For the foregoing reasons, although the Government takes no position on the Public Health Intervenors' motion for permissive intervention, the Government respectfully requests that the Court deny the Public Health Intervenors' motion for intervention as of right under Rule 24(a)(2).

Dated: June 12, 2017                            Respectfully submitted,


JOYCE R. BRANDA
Deputy Assistant Attorney General

JUDRY L. SUBAR
Assistant Director, Federal Programs
Branch

*/s/ Michael H. Baer*
MICHAEL H. BAER
Trial Attorney (NY Bar No. 5384300)
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:   (202) 305-8573
Facsimile:   (202) 616-8460
E-mail:        Michael.H.Baer@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 12, 2017, a true, correct, and exact copy of the foregoing document was served via electronic notice by the CM/ECF filing system to all parties on their list of parties to be served in effect this date.


*/s/ Michael H. Baer*
MICHAEL H. BAER