IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-17-009-R |
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, in his official capacity, et al. | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on three separately filed Motions to Intervene. Docs. 35, 36 & 46. For the reasons that follow, the Motions are DENIED.

## Discussion

This suit involves a facial challenge to a rule promulgated by the Occupational Safety and Health Administration ("OSHA"), titled "Improve Tracking Workplace Injuries and Illnesses."[1] Known as the Recordkeeping Modernization Rule, it requires employers to electronically submit injury and illness data and to establish reasonable procedures for reporting employee injuries and illnesses. It also precludes employers from retaliating against employees for reporting injuries or illnesses.

Plaintiffs, a collection of trade and business associations, are challenging the Rule under the Administrative Procedures Act, the First Amendment, and the Fifth Amendment.

---

[1] 81 Fed. Reg. 29,624 (May 12, 2016), as revised at 81 Fed. Reg. 31,854 (May 20, 2016).

Defendants are the federal agencies and officials tasked with enforcing the Rule. Fearing that the Government's defense of the Rule will be less than vigorous, several groups have moved to intervene with the intent of preserving the Rule against Plaintiffs' facial challenge. Those groups include two Unions—(1) the American Federation of Labor and Congress of Industrial Organizations and (2) the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, "Unions"). Also moving to intervene are several groups that research and advocate on workplace safety and health issues—the Public Citizen Health Research Group, American Public Health Association, Council of State and Territorial Epidemiologists, and Center for Media and Democracy (collectively, "Public Health Advocates").

Intervention by any of these parties will require them to satisfy one of the two grounds for intervention set out in Federal Rule of Civil Procedure 24: permissive intervention or intervention as of right. Parties seeking to intervene as a matter of right either must point to a federal statute that affords them that unconditional right, Fed.R.Civ.P. 24(a)(1), or meet the four requirements of Rule 24(a)(2) by showing that

> (1) the [motion] is timely, (2) the [movant] claims an interest relating to the property or transaction which is the subject of the action, (3) the [movant's] interest may be impaired or impeded, and (4) the [movant's] interest is not adequately represented by existing parties.

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1231 (10th Cir. 2010) (alterations omitted).

Both the Unions and the Public Health Advocates argue the Court must allow them to intervene. But because neither points to a federal statute that expressly affords them that right, any intervention by right hinges on their ability to satisfy the four elements of Rule 24(a)(2), which both the Plaintiffs and the Government insist they cannot do. The crux of the disagreement concerns the Rule's fourth element—that is, whether the existing parties (in this case just the Government) adequately represent the Unions' and Public Health Advocates' interests. Because their arguments are largely the same, the Court decides them in conjunction.

As the moving parties, the Unions and the Public Health Advocates have the burden to show that the Government will not adequately represent their interests. *See, e.g., Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996). Ordinarily, "[t]his requirement is satisfied where the applicant shows that representation of his interest *may be* inadequate—a minimal showing." *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regulation Comm'n*, 787 F.3d at 1072 (quotes omitted). This presumption, however, is reversed "where the objective of the applicant for intervention is identical to that of one of the parties." *Id*. (quotes omitted). In other words, where the Government's and the would-be intervenor's interests are identical, there is a presumption that the representation is adequate—*even if* the would-be intervenor "may have different ultimate motivations from the governmental agency." *Id*. at 1072–1073.

Here, short shrift shows why the Unions, Public Health Advocates, and the Government all have an identical interest: all want the Rule to stand. Because all have

3

identical objectives in the dispute, the Court must presume that the Government's representation is adequate. Consequently, "[t]o overcome this presumption, [the Unions] must make a concrete showing of circumstances that the [Government's] representation is inadequate." *Id.* at 1073; *see also* 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2017) ("The rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a very strong showing of inadequate representation has been made.").

Neither the Unions nor the Public Health Advocates make this showing, and none of their arguments persuade. Their first contention seems to suggest that the Government can never represent the interests of private groups such as theirs since the Government generally must promote the broad public interest. They cite *WildEarth Guardians v. National Park Service*, in which the Tenth Circuit noted "that it is on its face impossible for a government agency to carry out the task of protecting the public's interests and the private interests of a prospective intervenor." 604 F.3d 1192, 1200 (10th Cir. 2010). Never mind that the Court did not decide adequacy of representation in *WildEarth Guardians*. A review of the other cases cited by the Unions and Public Health Advocates convinces the Court that the Tenth Circuit's blanket statement is really not that at all. Rather, it seems to apply in the narrow instances where the specific economic interests of parties seeking to intervene diverge from the public interest at large.

For example, in *Utah Ass'n of Counties v. Clinton*, the Tenth Circuit found that environmental organizations and tourism-related businesses could intervene as of right

because the United States, in "represent[ing] the broader public interest" in defending the designation of a monument, would "inevitably favor certain uses over others," which would necessarily exclude some private interests held by the intervenors. 255 F.3d 1246, 1256 (10th Cir. 2001). Similarly, in *Utahns for Better Transp. v. U.S. Dept. of Transp.*, the Department of Transportation's defense of a regional transportation plan would have forced it to choose between defending the public interest and the interests of several trade associations representing the transportation infrastructure community. 295 F.3d 1111, 1117 (10th Cir. 2002). That was particularly problematic given that the Department of Transportation would likely have to oppose both existing and future contracts held by the intervening group's members. *Id*. at 1113.

Lastly, the Public Health Advocates direct the Court to *New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Service*, in which the Tenth Circuit found that environmental groups could intervene as matter of right to defend the United States Forest Service's plan to reduce the number of roads and trails available to cars in Santa Fe National Forest.  540 Fed.Appx. 877, 881 (10th Cir. 2013) (unpublished). Several factors, however, compelled that conclusion. And their absence here illustrates why neither the Union nor the Public Health Advocates may intervene.

First, *in New Mexico Off-Highway* "the environmental groups claimed hardships of their own, distinct from the hardships of the Forest Service." *Id*. But here, neither the Unions nor the Public Health Advocates have claimed any hardship distinct of that which would befall the general public if the Rule is invalidated. After all, OSHA promulgated the Rule in order to protect the interests that the movants purport to represent. That basis alone

suggests that joining them to an already crowded litigant field would not add much value.

*See e.g., F.T.C. v. Johnson,* 800 F.3d 448, 452 (8th Cir. 2015) (finding that the Federal

Trade Commission adequately represented the interests of consumers who moved to

intervene because "the FTC, on behalf of consumes, seeks relief for the same deceptive

and unconscionable business practices alleged by the consumers") (internal quotes

omitted)*; see also United States v. Territory of Virgin Islands*, 748 F.3d 514, 523 (3d Cir.

2014) (concluding that the United States adequately represented an inmate's interests in

challenging prison conditions on Eighth Amendment grounds because the inmate "[was]

the exact constituent the United States is attempting to protect").

Second, the *New Mexico Off-Highway* court specifically noted that the

environmental groups sought to offer novel arguments—arguments that "there [was] no

guarantee that the Forest Service [would] make." *Id*. In contrast, the applicants here have

not identified separate legal arguments that they believe would save the Rule but which the

Government will discard. Indeed, by all accounts, the Unions, Public Health Advocates,

and the Government "all march in legal lockstep when defending the [Rule] against the

plaintiffs' federal statutory and constitutional challenges." *Pub. Serv. Co. of New*

*Hampshire v. Patch*, 136 F.3d 197, 208 (1st Cir. 1998) (finding the "symmetry of interest

among the [putative intervenors] and the [state] commissioners ensures adequate

representation"). Granted, the movants might harbor economic interests distinct from the

Government. But that alone does not suggests inadequacy of representation. The Unions

and the Public Health Advocates "may be motivated to defend the plaintiffs' suit because

of economic interests not necessarily shared by the . . . federal defendants, but there has

been no showing that the nature of those economic interests is related to colorable legal defenses that the public defendants would be less able to assert." *Natural Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F2d 60, 62 (2d Cir. 1987); *see also S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003) (denying Tribe's motion to intervene where Tribe offered "a merely theoretical risk of conflicting legal duties" on part of the United States).

Third, while neither the plaintiff nor the Government in *New Mexico Off-Highway*, opposed the environmental groups' effort to intervene, 540 Fed. Appx. at 879, 882, all existing parties oppose intervention here. Plaintiffs invoke the Tenth Circuit's instruction to keep litigation matters "as simple as possible," lest "too many cooks spoil the broth." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007) (en banc). Similarly, the Government's objection to intervention is born of its belief that it can defend its Rule just as ably as can the Unions or the Public Health Advocates.

In sum, many of the cases in which the Tenth Circuit found parties could intervene as of right "involve[d] contentions that the government, when it has multiple interests to pursue, will not adequately pursue the particular interest of the applicant for intervention." *Id*. at 1203–1204. Here, because the Government has stated on record that it intends to defend the Rule, the particular interest of the movants—preserving the Rule—mirrors that of the Government. "The only issue to be decided on the merits of this action is the validity of the [Rule], and on that issue the interest of the [putative intervenors'] is identical to that of the [Government]: that the validity of the [Rule] be upheld." *Cedars-Sinai Med. Ctr. V. Shalala*, 125 F.3d 765, 768 (9th Cir. 1997) (rejecting motion to intervene in action

challenging the Health Care Financing Administration's policy on Medicare coverage); *see also Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (finding that California Department of Fair Employment and Housing adequately represented employee allegedly fired on discriminatory grounds because state agency and employee sought similar remedies and shared the same interest in enforcing the Fair Employment and Housing Act).

Moreover, suppose the Court were to accept the putative intervenors' arguments that the Government can never adequately represent their interests in defending agency action against a facial attack. If that were the case, private parties could always intervene to defend any law or agency action from which the intervenors stood to gain. Neither the Unions nor the Public Health Advocates, however, direct the Court to any authority that suggests the Tenth Circuit's standard under Rule 24 is *that* generous. Surely this is not the "concrete" showing of inadequate representation contemplated by Rule 24.

The arguments for intervention in this case essentially boil down to fears over what OSHA, given the new Presidential Administration, might or might not do when it comes to defending the Rule. For instance, the movants worry that the Government will choose not to defend the Rule's provision calling for the Government to publicly disclose companies' illness and injury data because the Government, the movants argue, does not derive any benefit from making this information public. Worse, the movants fear, the Administration might even move to weaken or rescind the Rule. Granted, OSHA might amend the Rule through the appropriate formal rulemaking process. But this would then moot the portions of the movants' suits seeking to defend any of the Rule's provisions that

had been repealed. *See, e.g., Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises or replaces the challenged law and thereby removes the complained-of-defect."). On the other hand, the Administration might vociferously defend the Rule and thus represent the interests of the Unions and Public Health Advocates.

No one can say. What one can say, though, is that no would-be intervenor can ever be wholly certain of a litigant's future position. Granted, the Court is aware of the Executive Branch's signals that it may rescind regulations passed by previous Administrations.[2] But there is no signal as to the Department of Justice's plans for *this* specific regulation. The Unions' and Public Health Advocates' "speculative concerns are insufficient to rebut the presumption that existing parties will adequately represent their interest." *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87–88 (D. Conn. 2014).[3] That said, the Court is cognizant that the Government's position could change. It might not choose to defend the Rule. Consequently, the Court will deny both Motions to Intervene without prejudice, so that the Unions and Public Health Advocates may renew their requests to intervene at a later time if the Government's position changes.

---

[2] One Executive Order recently issued by President Donald Trump, for example, in addition to encouraging cost savings by repealing regulations, requires federal agencies to repeal at least two existing regulations if a new regulation is proposed. Exec. Order No. 13,777, 82 Fed. Reg. 12,285 (Feb. 24, 2017).

[3] This is also why the Court need not dive into the disagreement between the Public Health Advocates and the Government over whether the Rule actually mandates that the Government publish the data it receives on workplace injuries and illnesses. As of now, there is not any concrete reason to believe that the Government will not publish this data.

That said, the Court could still grant the Unions' request for permissive intervention, which it may do if it finds that the moving party "has a claim or defense that shares with the main action a common question of law or fact," and that granting intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(1)(B), (3). Though the Government has not taken a stance on permissive intervention here, Plaintiffs object. At least for now, the Court is inclined to rebuff the movants' attempts to intervene on the basis that their interests are already represented. And to be sure, this is an appropriate ground upon which to deny permissive intervention. *See, e.g., Tri-State*, 787 F.3d at 1072–73 (affirming denial of motion to intervene on those grounds and rejecting "suggestion that Rule 24(b) does not provide for consideration of adequate representation"); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 249 (D.N.M. 2008) ("While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.").

The Court is persuaded that, at least for now, the Government is adequately representing the interests of the Unions and Public Health Advocates. The Motions to Intervene are therefore DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED this 26th day of June 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE