## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NATIONAL ASSOCIATION OF HOME      )
BUILDERS OF THE UNITED STATES,    )
et al.,                           )
                                  )
            Plaintiffs,           )
                                  )
v.                                )        Case No. CIV-17-009-PRW
                                  )
JULIE A. SU, ACTING SECRETARY OF  )
LABOR, in her official capacity, et al.,   )
                                  )
            Defendants.           )

## ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 92) and Defendant's combined Motion to Dismiss and Motion for Summary Judgment (Dkt. 105). For the reasons explained below, the Motion to Dismiss is **GRANTED** and the action is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file a Second Amended Complaint within forty-five days of this Order, and the parties may re-urge the cross-motions for summary judgment within thirty days of any amended complaint.

### *Background*

This case concerns an Occupational Safety and Health Administration ("OSHA") final rule entitled "Improve Tracking of Workplace Injuries and Illnesses."[1] As originally proposed in November 2013, the purpose of the rule was to expand reporting requirements

---

[1] 81 Fed. Reg. 29,624 (May 12, 2016), *as revised at* 81 Fed. Reg. 31,854 (May 20, 2016) (codified at 29 C.F.R. pt. 1904).

for injury and illness records.[2] The proposed rule would have required certain employers to electronically submit forms already in use—OSHA Forms 300 and 301, which provide detailed records of each reported incident, as well as Form 300A, a more general summary of injury and illness statistics—on a quarterly basis. OSHA planned to use this new data for enforcement and discussed the possibility of making the data available in a public database.

A public comment period followed, during which OSHA received nearly 2000 comments to the proposed rule.[3] Some of those comments expressed concerns that the rule would incentivize employers to discourage employees from reporting injuries and illnesses in order to present a better safety record if and when the data was made publicly available. To address these concerns, OSHA issued a supplemental notice of proposed rulemaking in August 2014 (the "Supplemental Notice").[4] The Supplemental Notice laid out three proposed measures to encourage accurate, complete reporting:

> "(1) A requirement that employers inform their employees of their right to report injuries and illnesses free from discrimination or retaliation; (2) a provision requiring that any injury and illness reporting requirements established by the employer be reasonable and not unduly burdensome; and (3) a prohibition against disciplining employees for reporting injuries and illnesses."[5]

---

[2] *See* 78 Fed. Reg. 67,254, 67,260 (Nov. 8, 2013) (notice of proposed rulemaking).

[3] Administrative Record (Dkt. 89-1).

[4] 79 Fed. Reg. 47,605 (Aug. 14, 2014).

[5] *Id.* at 47,607.

OSHA briefly discussed each of the measures and how they could be implemented, but did not propose specific regulatory text. OSHA also posed several questions regarding each measure, seeking information on current employer practices and ways to clarify the final rule. The Supplemental Notice reopened the comment period for sixty days to allow public input on the new measures.

On May 12, 2016, OSHA issued the Final Rule.[6] The Final Rule contained the electronic reporting requirements from the first Notice of Proposed Rulemaking, as well as all three measures discussed in the Supplemental Notice. Several editorial corrections, none relevant here, were made to the Final Rule several days later.[7] OSHA delayed enforcement of the reasonable reporting and anti-retaliation measures until December 1, 2016.

Plaintiffs, trade associations from Oklahoma and around the nation, brought this suit in January 2017, bringing various challenges to the electronic reporting requirement, the reasonable reporting requirement, and the anti-retaliation provision. In June 2017, OSHA published a new Notice of Proposed Rulemaking that suggested portions of the Final Rule would be revised.[8] At the parties' request, this case was stayed while the new round of rulemaking progressed.[9] In January 2019, OSHA published a revision to the Final Rule.[10] Citing privacy concerns and a potential disincentive to accurate injury and illness reporting,

---

[6] 81 Fed. Reg. 29,624 (May 12, 2016), *as revised at* 81 Fed. Reg. 31,854 (May 20, 2016) (codified at 29 C.F.R. pt. 1904).

[7] 81 Fed. Reg. 31,854 (May 20, 2016).

[8] 82 Fed. Reg. 29,261 (June 28, 2017).

[9] Order (Dkt. 72).

[10] 84 Fed. Reg. 380 (Jan. 25, 2019).

the revision rescinded the electronic reporting requirements as to OSHA Forms 300 and 301. The requirement to periodically submit summary Form 300A was kept in place for certain employers. The measures introduced by the Supplemental Notice, including the reasonable reporting requirement and the anti-retaliation provision, were unchanged.

Following the revision, the case was reopened. Plaintiffs filed an Amended Complaint (Dkt. 87), dropping challenges to the now-modified electronic reporting requirements, but continuing to press challenges to the reasonable reporting requirement and the anti-retaliation provision. The parties previously agreed that this case, which turns on issues of statutory construction and administrative law as applied to a discrete regulatory record, should be decided on cross-motions for summary judgment (Dkt. 37). Those Motions are now before the Court (Dkts. 92, 105). Also before the Court is the brief of *amici curiae* filed in support of Plaintiffs' Motion (Dkt. 104).

### *Legal Standard*

Before it can reach the cross-motions for summary judgment, the Court must first address Defendants' Motion to Dismiss. Specifically, the Court must satisfy itself that Plaintiffs have standing to bring this action, and therefore that the Court has jurisdiction to hear and decide the matter.

The Constitution limits federal court jurisdiction to actual cases or controversies.[11] "One element of the case-or-controversy requirement is that plaintiffs must establish that

---

[11] U.S. Const. art. III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

they have standing to sue."[12] Plaintiffs bear the burden to demonstrate standing, which must exist (1) when the action is brought; (2) throughout the course of litigation; and (3) as to each plaintiff and to each individual claim.[13] An organization or association has standing "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[14]

"[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[15] An "injury in fact" is an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[16] For pre-enforcement challenges, conjectural future injuries or alleged fear of such injuries is not enough; rather, a potential injury must be "certainly impending."[17]

---

[12] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotations omitted).

[13] *Rocky Mountain Peace & Just. Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1151 (10th Cir. 2022); *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019); *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1248 (10th Cir. 2021) ("Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021))).

[14] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Here, the parties confine their disputes to the first element.

[15] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotations and citations omitted).

[16] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

[17] *Clapper*, 568 U.S. at 409; *see COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1222–23 (10th Cir. 2016).

*Analysis*

Plaintiffs' Amended Complaint contains a single paragraph directly addressing standing.[18] In it, Plaintiffs allege the elements of associational standing, including that their "members will be directly and adversely affected by the [revised Final Rule.]"[19] Plaintiffs further allege that they participated in the rulemaking process by submitting comments and attending a public meeting. As a result, they conclude, "standing is self-evident."[20] The individual causes of action in the Amended Complaint focus mainly on alleged procedural breaches in violation of the Occupational Safety and Health Act of 1970 ("OSH Act"), the APA, and the Constitution. Alleged injuries include lack of notice of obligations,[21] prejudice from being unable to meaningfully participate in the rulemaking process,[22] and potential future citations and penalties pursuant to the anti-retaliation provision.[23]

Defendants argue that these allegations fall short. First, they argue that Plaintiffs' Motion for Summary Judgment (Dkt. 92) does not "'set forth' by affidavit or other evidence 'specific facts'" to demonstrate standing and bolster the "mere allegations" found in the Amended Complaint.[24] Defendants next invoke the principle, set forth in *Summers*

---

[18] Pls.' Am. Compl. (Dkt. 87), ¶ 26.

[19] Pls.' Am. Compl. (Dkt. 87), ¶ 26.

[20] Pls.' Am. Compl. (Dkt. 87), ¶ 26.

[21] Pls.' Am. Compl. (Dkt. 87), ¶ 102.

[22] Pls.' Am. Compl. (Dkt. 87), ¶ 107.

[23] Pls.' Am. Compl. (Dkt. 87), ¶ 112.

[24] *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

*v. Earth Island Institute*,[25] that associational standing is not granted to large organizations "in light of statistical probabilities," but rather that plaintiffs must specifically identify a member or members of their organizations who "had suffered or would suffer harm."[26] This, Defendants say, Plaintiffs have failed to do. Finally, Defendants argue that Plaintiffs fail to clear the bar to maintain a pre-enforcement challenge. According to Defendants, Plaintiffs' failure to allege any enforcement actions, any threats of enforcement, or any intent on the part of their members to engage in potentially violative behavior, means they have failed to plead a cognizable, "certainly impending" injury.

Plaintiffs disagree. Though they maintain that standing is sufficiently alleged by the Amended Complaint, they attach to their Response (Dkt. 106) affidavits by leaders of five of the seven Plaintiff organizations to supplement the basis for their standing arguments.[27]

Plaintiffs begin by contesting that, pursuant to *Summers*, they must identify specific members of their associations who have suffered or will suffer injuries because of the Final Rule. From the Response (Dkt. 106), it is unclear if this position stems from (1) reliance on an asserted presumption in favor of standing; (2) a perceived factual or legal distinction that renders the *Summers* identification principle[28] inapplicable; or (3) reliance on the

---

[25] 555 U.S. 488 (2009).

[26] *Id.* at 497–98.

[27] Pls.' Resp. Ex. 1 (Dkt. 106-1).

[28] *Summers*, 555 U.S. at 497–98.

exception in *Summers* for situations where "*all* the members of the organization are affected by the challenged activity."[29]

Start with the asserted presumption. Plaintiffs suggest that directly regulated parties, such as their members, presumptively have standing to challenge the regulations to which they are subjected. But the cases Plaintiffs cite for this proposition do not reach so far. In *NFIB v. Dougherty*,[30] the court related a party's argument for a presumption, but the issue was not contested and did not factor into the court's standing analysis.[31] *United States Telecom Association v. FCC*,[32] quoting from *Lujan*, states that when a person or company is the direct object of agency action, "there is ordinarily little question" that injury has occurred.[33] But that opinion makes clear that this "presumption" (perhaps more accurately characterized as simple description) applies to challenges to discrete enforcement actions, not pre-enforcement review of agency rules.[34] In *that* context, a plaintiff must still demonstrate "that the rules inflict a sufficiently concrete and actual injury."[35]

The regulated broadband provider in *United States Telecom Association* demonstrated, via affidavit, its "intention to engage in a course of conduct arguably

---

[29] *Id.* at 498–99.

[30] No. 16-CV-2568-D, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017).

[31] *Id.* at *5–6.

[32] 825 F.3d 674 (D.C. Cir. 2016).

[33] *Id.* at 739 (quoting *Lujan*, 504 U.S. at 561–62).

[34] *Id.* at 739.

[35] *Id.*

affected with a constitutional interest, but proscribed by [regulation]."[36] Rather than resting on a presumption of standing, the court evaluated the pleadings and affidavit evidence to conclude that the plaintiff had suffered an injury in fact.[37] *Chamber of Commerce of the United States v. Edmondson*[38] similarly applied no presumption of standing for directly regulated association members, requiring instead a showing of "real, immediate, and direct" threats of injury.[39] The Court finds that Plaintiffs here enjoy no presumption of standing for their pre-enforcement challenges.

As to applicability, Plaintiffs provide no precedent or argument to distinguish *Summers* or to explain why its identification requirement does not apply here. Plaintiffs simply offer the conclusory statement that "it is unnecessary for Plaintiffs to identify members injured by the final Rule in order to establish standing."[40] But *Summers* has not been overturned, and the Tenth Circuit recently reaffirmed its holding.[41]

---

[36] *Id.* at 740 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014)).

[37] *Id.* at 739–40.

[38] 594 F.3d 742 (10th Cir. 2010).

[39] *Id.* at 756–57 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

[40] Pls.' Resp. (Dkt. 106), at 8 n.2.

[41] *Speech First, Inc. v. Shrum*, 92 F.4th 947 (10th Cir. 2024). The case concerned plaintiffs proceeding pseudonymously, and whether unnamed—but still identified—parties could satisfy the *Summers* identification requirement. The Court found that associational standing can be maintained on the basis of affidavits by pseudonymous members, and that this conclusion harmonized with the *Summers* holding that "there needs to be a particular person who is injured, not just a statistical probability that some member would suffer an injury." *Id.* at 952. *See also Do No Harm v. Pfizer Inc.*, No. 23-15, 2024 WL 949506, at *7–10 (2d Cir. Mar. 6, 2024); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

Finally, as to the *Summers* "all members" exception, the Amended Complaint states that "Plaintiffs' members include employers covered by the OSH Act,"[42] that "[m]any of Plaintiffs' members have adopted procedures . . . [that] may be prohibited under the Rule,"[43] and that "[Plaintiffs'] members will be directly and adversely affected by" the Final Rule.[44] Allegations under the causes of action are broad, extending to "employers" generally or to "Plaintiffs and their members."[45] Each of the five affidavits produced in the Response (Dkt. 106) state that "many" or "[n]umerous" of the Plaintiff organization's members are covered by the Final Rule, attempting to determine the meaning of the reasonable reporting requirement, or subject to enforcement under the anti-retaliation provision.[46]

The Court finds that Plaintiffs have not identified one or more members with a cognizable injury, nor have they demonstrated that all of their members are affected by the Final Rule. While some of the language in the Amended Complaint could be read to apply broadly to all members of the Plaintiff organizations, much of it cuts the other way. In addition, each of the affidavits uses qualified language to include "many" or "numerous" of the organization's members. By failing to satisfy the *Summers* identification requirement, Plaintiffs have failed to demonstrate associational standing. That failure

---

[42] Pls.' Am. Compl. (Dkt. 87), ¶ 20

[43] Pls.' Am. Compl. (Dkt. 87), ¶ 20.

[44] Pls.' Am. Compl. (Dkt. 87), ¶ 26

[45] Pls.' Am. Compl. (Dkt. 87), ¶¶ 102, 107, 112.

[46] Pls.' Resp. Ex. 1 (Dkt. 106-1).

extends to each Plaintiff and each cause of action. Accordingly, the Court finds that Plaintiffs have not yet established standing to maintain this action, that the Court lacks jurisdiction over it, and that the case must be dismissed.[47] Because the standing problem is readily remediable by amendment, this dismissal is without prejudice.[48]

### Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. 105) is **GRANTED** and this action is **DISMISSED WITHOUT PREJUDICE**. The cross-motions for summary judgment (Dkts. 92, 105) are **DENIED AS MOOT**. The Court **GRANTS LEAVE** for Plaintiffs to file a Second Amended Complaint, should they so choose, within forty-five days of this Order. The Court also **GRANTS LEAVE** for the parties to re-urge their Motions for Summary Judgment (Dkts. 92, 105) within thirty days of any Second Amended Complaint.

**IT IS SO ORDERED** this 11th day of March 2024.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[47] *Cf. Georgia Republican Party v. SEC*, 888 F.3d 1198, 1204–05 (11th Cir. 2018); *Ouachita Watch League v. United States Forest Service*, 858 F.3d 539, 543–44 (8th Cir. 2017).

[48] *See, e.g.*, *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997) (leave to amend may be denied where such amendment would be futile).